## 56108. STATE MUTUAL INSURANCE COMPANY v. SULLENS.

DEEN, Presiding Judge.

1. Sullens sued the appellant as beneficiary of three insurance policies on the life of her son Bennie Sullens. One of the policies was a "whole life" policy no. 7600808 in the face amount of $500 owed "upon receipt of due proof that the insured died while this policy was in force," which amount has been paid, and a double indemnity clause if the death resulted "from bodily injury caused by an accident." Nos. 7600809 and 810 are each a straight accident policy with a primary benefit of $1,000, payable upon proof that "the insured has died as the result of drowning or has sustained bodily injuries effected solely through external, violent and accidental means which. . .

directly and independently of all other causes resulted in his death." Injuries "intentionally inflicted by another person" are not accidental. The latter two policies are *accident* policies only and the accidental death benefit is in fact the primary benefit stated where, as here, death occurred within the first year during which the policy was in effect. It was accordingly error, as to these policies, to submit a verdict form to the jury which allowed them to grant both a "primary" and an "accidental" benefit under each policy. The highest collectible amount on the accident policies under the facts of this case is $1,000 per policy. On the whole life policy it is the $500 accident benefit, the $500 death benefit having been paid prior to suit.

2. The defendant introduced in evidence a certified copy of Sullens' death certificate, which shows in part: "Immediate Cause of Death: Drowning, Due to Bilateral Subdural Hemorrhage due to Blow to Head (or blows) . . . How did injury occur . . . Drowning — involving altercation with another person." A deposition of the medical officer who supplied this part of the death certificate revealed that he had no knowledge of the cause of death other than as revealed by his autopsy. From this latter, including discovery of large amounts of water in the stomach and frothy substance in the bronchiae, the immediate cause of death was established as drowning. Examination of the head area revealed evidence of blows about the head and face, including the parietal lobes, under which lay the hemorrhaged area. The physician did not determine the cause of the injuries. Asked concerning the likelihood of death from the exterior injuries if the subject had not drowned, the witness replied: "He would likely have died. I cannot categorically say that he would have."

(a) From the above it is obvious, since both sides admit the insured met death by drowning, and simple death by drowning is covered as an accident in all policies, that the plaintiff is entitled to recover unless prevented by other evidence in the testimony of the medical witness or in the death certificate itself. As to the former, the witness knew only the condition of the body, and could not from this categorically state that the insured would have died

if, following the prior injuries, he had not been drowned. Nor, while such head injuries are consistent with an assault by another person, is there the slightest scrap of evidence to indicate that this, rather than some other sort of accident was in fact their source, or, if so, that they were "intentionally inflicted." The case is accordingly not strengthened by the testimony of the medical examiner.

(b) This leaves the death certificate itself, upon which the appellant relies, contending that it has not been disproved and that it constitutes prima facie proof that Sullens had an altercation with another person which occasioned his death so as to come under the exclusion.

It has frequently been written that statements in the death certificate are prima facie evidence of the facts therein set out, and give rise to a presumption of their truth which may, however, be rebutted on the trial of the case. See cases cited in the fourth division of *Branton v. Independent Life &c. Ins. Co.,* 136 Ga. App. 414, 416 (221 SE2d 217) (1975). The statement is too broad. It was clarified in *Independent Life &c. Ins. Co. v. Branton,* 236 Ga. 514 (224 SE2d 380) (1976) where this division of the opinion was vacated in response to the argument that "if the recital contained in the pleaded certificate is a conclusion, such recital cannot raise a presumption that must be rebutted by the applicant at the trial of the case." Accordingly, we accept the conclusion of death by drowning in the certificate as having prima facie probative value, in view of the testimony that conditions diagnostic of this type of suffocation were present, and in the absence of any contrary contention. We also accept as facts the physical findings of trauma to various portions of the skull and surrounding tissues. That these blows would have resulted in death if the deceased had not drowned, or that the blows were the cause of the drowning, or that they were received in the course of a fight with some unidentified person, or that they were intentionally inflicted by such person and were also the cause of death, are all conclusions which are *not* entitled, simply because they appear in the death certificate, to be accepted as matters of fact. The most that can be said is that from the facts which do appear in the certificate and deposition, there may have been enough to authorize a

jury inference that the conclusion was true, but the jury, on the contrary, rejected this inference and found in favor of accidental drowning. The trial court properly refused to direct a verdict.

3. The third enumeration of error contends that the court erroneously defined accident. The term was correctly defined at some length and the jury was also instructed that the death must result by an accident or by accidental means "as defined in the policy." Had further instructions been desired they should have been specifically requested.

4. On burden of proof, the court charged that the burden was on the plaintiff to prove that death resulted as defined in the policy; that there was a presumption that where evidence is in conflict death was not intended by another; that whether the death was due to drowning or accident within the policy coverage is a question of fact for jury decision, and that "the amount of evidence sufficient to overcome the presumption that death was from accident rather than from injuries intentionally inflicted by another is purely a question for you to determine." The presumption here used was stated in *Continental Assur. Co. v. Rothell,* 121 Ga. App. 868 (3) (176 SE2d 259) (1970) in a five to four decision, holding that under the circumstances there set out the presumption raised a prima facie case for recovery, and, nothing to the contrary appearing, the trial court properly granted summary judgment to the plaintiff. On certiorari the Supreme Court (227 Ga. 258 (181 SE2d 283)) reversed, holding that the evidence did not *demand* a finding that the insured's death was the result of "accidental means," and cited the following from *Riggins v. Equitable Assur. Society,* 64 Ga. App. 834, 835 (14 SE2d 182) (1941): "There can be no accident, as a matter of law, without existence of a fact or facts pointing to death through accidental means. It is incumbent upon the plaintiff to show that in the act or acts which preceded the injury alleged to have caused the insured's death something unforeseen, unexpected, or unusual happened." The court also instructed the jury that "whether the death of the insured in this case was due to drowning or accident within the coverage of the policies in question or was due to injuries intentionally inflicted

by another person is a question of fact for you the jury to decide" and "it is for you the jury to determine from the evidence whether the death of the insured was the result of external and violent means so as to give rise to the presumption in favor of accident." As we understand the two *Rothell* cases, there is in fact no presumption of accidental means which will in and of itself *demand* a judgment in favor of a plaintiff. The facts may authorize inferences which support such a conclusion, however. Therefore, while it was technically error for the trial court to speak of a presumption in this connection, he three times pointed out to the jury that it was for them to decide between the theories of drowning or accident and intentionally inflicted injuries. In this they could not have been deceived. Taking the charge as a whole we find no reversible error.

As pointed out in the first division hereof, total liability under the three policies could not exceed $3,000, of which $500 had been paid prior to suit. Judgment is affirmed if the plaintiff, within ten days of the receipt of the remittitur from this court by the trial court, writes off $2,000, leaving a judgment in favor of the plaintiff for $2,500; otherwise, the judgment is reversed and a new trial granted.

*Judgment affirmed on condition. Smith and Banke, JJ., concur.*

ARGUED JUNE 28, 1978 — DECIDED JULY 13, 1978 — REHEARINGS DENIED JULY 31, 1978 —

*Robert J. Reed, Douglas Parks,* for appellant.
*Deal, Birch, Orr & Jarrard, E. Wycliffe Orr,* for appellee.