### 42061. LINDSEY v. THE STATE.
(330 SE2d 563)

MARSHALL, Presiding Justice.

This case is a continuation of *Lindsey v. State,* 252 Ga. 493 (314 SE2d 881) (1984).

In March of 1983, the appellant was convicted of the murder of his parents, and he was given the death penalty. *Lindsey v. State,* supra, was his direct appeal.

He has had a history of mental problems dating back to his early adolescence. Prior to his arrest, he had been committed to West Geor-

gia Central Regional Hospital on six different occasions since 1978. He has been diagnosed as psychotic, paranoid schizophrenic, and has been prescribed rather strong anti-psychotic medication: Navane and Haldol.

Finding the appellant unable to communicate with counsel in a coherent fashion, his appointed defense counsel filed a motion for psychiatric examination of the appellant on grounds that the appellant could not communicate with defense counsel or effectively assist in his defense. The trial court ordered that the appellant undergo a psychiatric examination at Central State Hospital in Milledgeville to determine his competence to stand trial, as well as his mental capacity to commit the offenses charged. However, for some reason not revealed by the record, he was not sent to Central State Hospital but rather an evaluating team from the hospital was sent to the jail to interview and evaluate the appellant. The appellant refused to talk to them, and they were unable to make an evaluation.

However, the appellant had uttered the name, "A. H. McCard," who is a psychiatrist in private practice. Defense counsel then filed a motion for private psychiatric examination of the appellant. In this latter motion, it was alleged that it was necessary that the defense be granted reasonable funds to employ a psychiatrist "to conduct a clinical evaluation of the accused's capacity for criminal responsibility in order to enable him to have an adequate defense, due process of law, and a fair trial." This motion was denied on grounds that, " 'The granting or denial of a motion for appointment of expert witnesses lies within the discretion of the trial court.' *High v. State*, 247 Ga. 289 (276 SE2d 5) (1981); *Patterson v. State*, 239 Ga. 409 (238 SE2d 2) (1977). This court is not inclined to exercise this discretion in the defendant's favor in this situation in which the defendant has refused to cooperate with state employed psychiatrists."

Under the provisions of OCGA § 17-7-130 (a), a pretrial hearing was convened in order to determine the appellant's competence to stand trial. There was expert medical testimony that the appellant's refusal to cooperate with the psychiatric evaluating team indicated that he probably needed to be placed in a psychiatric ward for evaluation. However, the trial court directed a verdict ruling that the appellant was competent to stand trial. As previously stated, he was later found guilty, and the death penalty was imposed.

On direct appeal in *Lindsey v. State*, supra, we reversed the direction of the verdict, on the ground that, although the jury may have decided from the evidence as a whole that the appellant was competent, the evidence did not demand such a finding. In accordance with *Baker v. State*, 250 Ga. 187 (297 SE2d 9) (1982), and the cases cited therein, this case was remanded to the trial court with the following directions:

" 'Upon remand the burden first falls upon the state to show there is sufficient evidence to make a meaningful determination of competency at the time of trial. If the court rules that a determination of appellant's competency at the time of his trial is not presently possible, then a new trial must be granted. If the court decides that such a determination is possible, the issue of competency to stand trial must be tried and the appellant shall have the burden to show incompetency by a preponderance of the evidence. The sole issue to be presented to the jury is that of mental incompetency; evidence as to guilt would be irrelevant. (Cit.) If the jury finds that the appellant was not mentally competent at the time of his trial, the verdict in the main case must be set aside. On the other hand, if the appellant fails by a preponderance of the evidence to prove incompetence at the time of his trial, the verdict of guilty shall stand . . .' *Baker v. State*, supra at 193." *Lindsey v. State*, 252 Ga., supra at pp. 497, 498.

Upon remand, the trial court ruled that it was possible to make a determination of the appellant's competence at his first trial. Under court order, the appellant was evaluated at Central State Hospital in July and August of 1984. This evaluation was for the purpose of determining the appellant's competency for trial at the present time, as well as to determine retrospectively his competence for trial at the time of his original trial in March of 1983. This psychological evaluation included numerous interviews by staff members, a battery of psychological tests, interviews with persons in the appellant's home community, as well as physical and neurological tests on the appellant. In taking these tests, the appellant was described as reasonably cooperative. The evaluating team had evidence of the appellant's low mentality, his previous diagnoses as paranoid schizophrenic, and his prior commitments; nonetheless, the conclusion was reached by the evaluating team that the appellant was competent to stand trial at his original trial and that he remains competent.

A hearing was held before a jury. Evidence was presented concerning the 1984 psychological evaluation of the appellant, as well as other evidence. The jury returned a verdict finding that the appellant was, and is, competent to stand trial. This appeal follows.

1. Since the docketing of this appeal, *Ake v. Oklahoma*, Case No. 83-5424 (decided February 26, 1985), has been decided by the United States Supreme Court.

Ake had also been charged with murder. His behavior at arraignment was so bizarre that the trial judge *sua sponte* ordered that he be examined by a psychiatrist. The psychiatrist diagnosed Ake as a probable paranoid schizophrenic. The trial judge ruled that Ake was not competent to stand trial, and he was ordered committed to a state mental hospital. However, the chief forensic psychiatrist at the hospital later informed the court that daily usage of the anti-psychotic

drug Thorazin rendered Ake competent to stand trial.

Ake, an indigent defendant, then requested that the court arrange to have a psychiatrist examine him to determine his sanity at the time of the offense, an inquiry which had not been made. In the alternative, Ake petitioned the court for funds to hire his own psychiatrist. The motion for a psychiatric evaluation at state expense was denied on the basis of *United States ex rel. Smith v. Baldi*, 344 U. S. 561 (73 SC 391, 97 LE 549) (1953).

At Ake's trial, no testimony was introduced concerning his mental state at the time of the offense, in that he had not been examined on that point. Ake was found guilty and given the death penalty. On certiorari, the United States Supreme Court reversed, holding that when the defendant is able to make an ex parte showing to the trial court that his sanity is likely to be a significant factor in his defense, the Constitution requires that a state provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one. The court further states, "This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the States the decision on how to implement this right." Slip opinion, p. 13. *United States ex rel. Smith v. Baldi*, supra, was distinguished on its facts, as well as on the ground that *Smith* was decided at a time when indigent defendants in state courts did not even have a constitutional right to the presence of counsel.

2. Without deciding whether or not the psychiatric evaluation of the appellant prior to his second competency hearing following our remand of the case did satisfy his constitutional rights under *Ake* insofar as the question of his competence to stand trial was concerned, this latter psychiatric evaluation did not address the question of whether the appellant was mentally competent to commit the offenses charged. Under the evidence in this case, a showing was made to the trial court that the appellant's sanity at the time of the offense was likely to be a significant factor in his defense, and under the mandate of *Ake* we do not believe that he was provided adequate psychiatric assistance on this issue. In accordance with *Ake*, the judgment must be reversed and the case remanded for a new trial as to guilt or innocence and, if raised by the defendant, competency to stand trial.

*Reversed and remanded. All the Justices concur.*

## ADDENDUM.

The state has filed a motion for rehearing, asking for a clarifica-

tion of our opinion in this case concerning the following questions: (1) Under *Ake*, is the appointment of a mental health expert other than a psychiatrist sufficient to safeguard the defendant's rights? (2) Does the expert so appointed become part of the defense team at trial? (3) When is the appointment of such an expert necessary?

The state argues as follows: The guidelines established in *Ake* would be satisfied if the trial court gave a criminal defendant access to an examination by a competent mental health expert who would be able to testify concerning the insanity or incompetency issues at trial. The appointment of a psychiatrist is not always necessary; other mental health experts, such as psychologists, can perform the functions referred to in *Ake* with the same degree of competence as a psychiatrist. Under *Ake*, the mere fact that the defendant has filed a motion does not constitute a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial. Only after a proper motion should the court appoint an expert to evaluate the defendant's mental state. When this is done, the court-appointed expert should report his findings to the court and the parties. The findings should involve only the defendant's mental state and not extraneous statements made by the defendant. The expert's findings would then serve as the basis for the court to determine if the defendant has made a preliminary showing that his sanity at the time of the offense, or his competence at the time of trial, will be an issue at trial. If the expert's findings indicate that the defendant's mental state will be an issue at trial, then, upon a proper showing of indigency by the defendant, the trial court should then appoint a medical expert to do an in-depth examination of the defendant on issues of insanity, incompetence, and possible mitigating evidence. Finally, the state suggests that by conferring with defense counsel prior to trial regarding issues to be presented at trial, by testifying at trial, and by providing defense counsel with a report of his findings, the medical expert would satisfy the guidelines established in *Ake* requiring that the expert assist in evaluation, preparation, and presentation of the defense case at trial. The expert would not need to "join" the defense team at trial, although his findings would be privileged to the defendant.

In response to the state's motion, we proceed to clarify our interpretation of *Ake*. In numerous and repeated instances, the Court in *Ake* reiterates its holding as being that, where a showing is made that the defendant's sanity is likely to be a significant factor at trial, the state is required to provide an indigent defendant with access to the assistance of a competent *psychiatrist* in preparing the defense. Therefore, we conclude that, when such a showing is made, the guidelines of *Ake* would not be satisfied by providing the defense with access to an examination by a mental health expert other than a psychi-

atrist. We agree that the appointment of a psychiatrist is not always necessary, even when the defense makes a motion for appointment of one. As held in *Ake*, the defendant must make a showing to the trial court that his sanity is likely to be a significant factor in his defense. Although in a given case out-of-court statements made by the defendant might be discounted as only an attempt by the defendant to feign insanity, such statements are by no means irrelevant. The trial court is authorized to order a psychiatrist, or perhaps some other competent mental health expert, to examine the defendant in order to determine whether his sanity is likely to be a significant factor in his defense. When the determination is made that it is, the defense must be provided with a psychiatrist to assist in his defense. As stated in *Ake*, "the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense. In this role, psychiatrists gather facts, both through professional examination, interviews, and elsewhere, that they will share with the judge or jury; they analyze the information gathered and from it draw plausible conclusions about the defendant's mental condition, and about the effects of any disorder on behavior; and they offer opinions about how the defendant's mental condition might have affected his behavior at the time in question. They know the probative questions to ask of the opposing party's psychiatrists and how to interpret their answers. Unlike lay witnesses, who can merely describe symptoms they believe might be relevant to the defendant's mental state, psychiatrists can identify the 'elusive and often deceptive' symptoms of insanity, *Solesbee v. Balkcom*, 339 U. S. 9, 12 (1950), and tell the jury why their observations are relevant." Slip Op. at pp. 10-11. Based on this language from the *Ake* opinion, we conclude that, in addition to examining the defendant, the psychiatrist must assist the defense by aiding defense counsel in the cross-examination and rebuttal of the state's medical experts. However, "[t]his is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." Id. at p. 13.

DECIDED MAY 28, 1985 —
REHEARING DENIED JUNE 18, 1985.

*A. Frank Grimsley, Jr., G. Russell Wright,* for appellant.
*Gary C. Christy, District Attorney, Richard E. Thomas, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Senior Attorney,* for appellee.